THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD D. WENDT, Defendant-Appellant.

Second District    No. 2—87—1203

Opinion filed May 15, 1989.

390

Andrew B. Spiegel, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Richard S. London and Terence M. Madsen, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Donald D. Wendt, was charged with tax evasion (count I), perjury (count II), willfully failing to file an income tax return for the taxable year 1983 (count III), filing a fraudulent income tax return (count IV), and willfully failing to file an income tax return for the taxable year 1984 (count V) in an information filed in the circuit court of Boone County. (See Ill. Rev. Stat. 1983, ch. 38, par. 32—2; ch. 120, pars. 5—502, 13—1301; Ill. Rev. Stat. 1985, ch. 120, pars. 5—502, 13—1301.) The State proceeded to trial on count V, willfully failing to file an income tax return for the taxable year 1984. A jury found defendant guilty of this offense, and he was sentenced by the court to 2½ years of probation conditioned on payment of a $2,500 fine; performance of 400 hours of community service; payment of all income taxes, interest, and penalties due the State; and service of six months of work release. Defendant has appealed from his conviction.

Defendant raises seven issues. He argues that this case should have been dismissed because (1) count V of the information was insufficient because it failed to allege that defendant was subject to the State income tax and failed to "allege any section of the [Illinois Income Tax] Act [Ill. Rev. Stat. 1985, ch. 120, par. 1—101 *et seq.*] setting forth an offense"; (2) "the failure of the General Assembly to abide by the provisions of Article 4, §13 of the Illinois Constitution of 1870 [with respect to passage of the Illinois Income Tax Act] renders this prosecution void *ab initio*"; and (3) his "inherent right to work for a living is not a taxable privilege and therefore he was not subject to prosecution for any violation of the [Illinois Income Tax] Act." He also argues that his conviction should be reversed because (4) he was denied a fair trial by improper remarks made by the prosecutor during the State's opening statement and closing arguments; (5) the evidence was insufficient to prove beyond a reasonable doubt that defendant had willfully failed to file a 1984 income tax return; and (6) the jury was improperly instructed regarding willfulness, the Illinois Income Tax Act, and defendant's defense. Finally, defendant argues that (7) the trial court erred in denying his motion in arrest of judgment.

In 1984, Chrysler Corporation paid $33,131.95 in wages to defendant for his work at Chrysler's Belvidere assembly plant. No money was withheld to pay the Illinois income tax because defendant, who was an Illinois resident, had filed an Illinois W-4 form claiming to be exempt from withholding. Defendant testified that he filed an Illinois 1040 form for 1984 but that it was returned with a letter from the Illinois Department of Revenue (DOR) telling him to sign it and to send the DOR a copy of his W-2 form. Defendant responded with a letter stating that he would sign the Illinois 1040 form if Chrysler signed the W-2 form. The records of the DOR indicated defendant did not file an Illinois 1040 form for the taxable year 1984. Defendant's primary defense was that the State failed to prove beyond a reasonable doubt that he acted willfully. In support of this defense, defendant presented evidence tending to show that, in reliance upon certain court opinions he read, articles interpreting the law and the United States Constitution he read, and speeches at certain seminars he attended, he had in good faith come to believe that he was not subject to the Illinois (and United States) income tax.

We will first consider defendant's fifth and sixth issues. In his fifth issue, defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that he acted willfully in failing to file his income tax return. Defendant contends:

"There was no evidence from which the jury could infer Wendt acted with a bad purpose or without grounds for believing his actions were lawful or with careless disregard for whether or not he had the right to act as he did. In short, they could not infer willfulness from the evidence adduced at trial.

\*\*\* The most the jury could reasonably infer from the evidence was that Wendt had a bona fide misunderstanding of the law. They could not infer a voluntary intentional violation of a known legal duty; that is the definition the [United States] Supreme Court has given to willfulness in the context of the tax statutes. [Citation.] A bona fide misunderstanding negates willfulness. [Citation.]

The evidence at trial showed Wendt honestly and sincerely believed that he was not subject to the income tax. \*\*\* There was no evidence from which the jury could reasonably infer a voluntary, intentional violation of any known legal duty.

The subjective state of mind of Wendt during 1984 was what was at issue. So long as he subjectively believed he was not subject to the tax, and so long as such belief was held in good faith, he was not willful and therefore not guilty. [Citations.]

The judgment below imposes criminal liability on an individual who in good faith misunderstood the law. The jury's verdicts [sic] are contrary to the evidence that Wendt had a bona fide misunderstanding of the law."

This argument displays a profound misunderstanding of both the mental state of willfulness and the mistake-of-law defense under Illinois law.

■ The offense of which defendant was convicted is defined in these terms:

"Any person who is subject to the provisions of this Act and who willfully fails to file a return \*\*\* shall, in addition to other penalties, be guilty of a Class 4 felony for the first offense and a Class 3 felony for each subsequent offense." (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301.)

In *People v. Clay* (1988), 167 Ill. App. 3d 628, 635-36, 521 N.E.2d 243, 249, we held that a violation of this statute is an "offense" as defined in section 2—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 2—12). Accordingly, we applied the provision of the Criminal Code concerning the mental state of "willfulness" to section 13—1301 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301). (*People v. Clay* (1988), 167 Ill. App. 3d 628, 636, 521 N.E.2d 243, 249.)

The Criminal Code provides:

> "Conduct performed knowingly or with knowledge is performed willfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." (Ill. Rev. Stat. 1985, ch. 38, par. 4—5.)

Section 13—1301 of the Act does not clearly require another meaning, so defendant willfully failed to file his income tax return if he knowingly failed to file it. See Ill. Rev. Stat. 1985, ch. 38, par. 4—5; ch. 120, 13—1301; *People v. Clay* (1988), 167 Ill. App. 3d 628, 636, 521 N.E.2d 243, 249.

The statute defining the applicable mental state provides:

> "A person knows, or acts knowingly or with knowledge of:
> ***
> (b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." (Ill. Rev. Stat. 1985, ch. 38, par. 4—5(b).)

Thus, to prove the mental element of the offense at bar, it was only necessary to prove that defendant was consciously aware that a failure to file his income tax return was practically certain to be caused by his conduct.

Section 4—3 of the Criminal Code provides:

> "Knowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of the offense unless the statute clearly defines it as such." (Ill. Rev. Stat. 1985, ch. 38, par. 4—3(c).)

Section 4—8 of the Criminal Code provides:

> "(a) A person's ignorance or mistake as to a matter of either fact or law, except as provided in Section 4—3(c) above, is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense.
>
> (b) A person's reasonable belief that his conduct does not constitute an offense is a defense if:
>
> (1) The offense is defined by an administrative regulation or order which is not known to him and has not been published or otherwise made reasonably available to him, and he could not have acquired such knowledge by the exercise of due diligence pursuant to facts known to him; or
>
> (2) He acts in reliance upon a statute which later is determined to be invalid; or
>
> (3) He acts in reliance upon an order or opinion of an Illi-

nois Appellate or Supreme Court, or a United States appellate court later overruled or reversed; [*sic*]

(4) He acts in reliance upon an official interpretation of the statute, regulation or order defining the offense, made by a public officer or agency legally authorized to interpret such statute." (Ill. Rev. Stat. 1985, ch. 38, pars. 4—8(a), (b).) Under these statutes, defendant's contentions with regard to the sufficiency of the evidence of willfulness are meritless.

● 2 Section 13—1301 of the Act does not clearly define the offense of willful failure to file a return as including as an element "[k]nowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of" section 13—1301, so such knowledge is not an element of the offense of willful failure to file a return. (Ill. Rev. Stat. 1985, ch. 38, par. 4—3(c); ch. 120, par. 13—1301.) All of defendant's contentions regarding the deficiencies of the evidence of willfulness really come down to one claim: that defendant believed he was complying with the law. Such a mistake is not a defense under section 4—8(a) of the Criminal Code for two separate reasons. First, such a belief falls squarely within the provisions of section 4—3(c) and so is not a defense under section 4—8(a). (Ill. Rev. Stat. 1985, ch. 38, pars. 4—3(c), 4—8(a).) Second, such a belief does not negative the existence of the mental state of the offense at bar, *i.e.*, conscious awareness by defendant that a failure to file his return was practically certain to be caused by his conduct. (Ill. Rev. Stat. 1985, ch. 38, pars. 4—5(b), 4—8(a); ch. 120, par. 13—1301.) Such a mistake is also not a defense under section 4—8(b), since none of the four alternative conditions listed there existed. Ill. Rev. Stat. 1985, ch. 38, par. 4—8(b).

■ Thus, defendant's contentions in his fifth issue that the evidence of willfulness was insufficient because it established that he believed he was not committing any offense are without merit. The ignorance or mistake of law claimed would not constitute a defense under section 4—8 of the Criminal Code. (Ill. Rev. Stat. 1985, ch. 38, pars. 4—8(a), (b).) Knowledge that his conduct constituted an offense or knowledge of the existence, meaning, or application of section 13—1301 of the Act was not an element of the offense defined in section 13—1301. (Ill. Rev. Stat. 1985, ch. 38, par. 4—3(c); ch. 120, par. 13—1301.) Accordingly, all the State was required to prove to establish the willfulness of defendant's failure to file his return was that defendant was consciously aware that a failure to file his return was practically certain to be caused by his conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 4—5(b); ch. 120, par. 13—1301.) Defendant's contentions

regarding his beliefs, even if true, would not affect the propriety of his conviction.

In his reply brief, apparently as an afterthought, defendant argues, as he did in the trial court, that the evidence was also insufficient to prove beyond a reasonable doubt that he failed to file his return. He bases this contention on his own testimony that he filed the return the first or second week of February 1985. The DOR returned it requesting that he sign it and send them a copy of his W-2 form. Defendant testified that he wrote back telling the DOR that he would sign his return if his employer signed the W-2 form.

Defendant presented no evidence to corroborate this testimony. Moreover, he ignores the redirect testimony of special agent Joanne Pflaum of the DOR, who checked the computer records of the DOR. She testified that those records indicated defendant had not filed a 1984 return, and her testimony in this regard was corroborated by a copy of the computer printout which was admitted as an exhibit. Since defendant did not ask Pflaum whether a return sent back to a taxpayer for a signature and a copy of a W-2 form would be recorded as filed in the DOR's computer records, we can only assume that both defendant and Pflaum were using the term "filed" in the same sense.

■ The question of whether defendant filed his 1984 return was therefore a credibility question. The jury evidently believed Pflaum, rather than defendant, on this point, and we will not disturb that determination. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734-35 ("[I]t is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. [Citations.] Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact").

In his argument on the sixth issue, defendant contends that the trial court erred by failing to give several jury instructions he requested. All of defendant's tendered instructions were properly refused.

■■ ■ The rules regarding the giving of jury instructions are well settled:

> "The sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence." (*People v. Gambony* (1948), 402 Ill. 74, 81-82, 83 N.E.2d 321, 325.)

(*E.g.*, *People v. Mitchell* (1975), 27 Ill. App. 3d 117, 121, 327 N.E.2d 158, 161.) Accordingly, instructions which do not accurately state the law, or are misleading or confusing, should not be given. (*People v. Dixon* (1982), 105 Ill. App. 3d 340, 348, 434 N.E.2d 369, 376.) Moreover:

> "[W]hile the jury should be given instructions which embody the defendant's legal theory of the case (Supreme Court Rule 451(a), 87 Ill. 2d 451(a)), that rule does not encompass instructions on erroneous or irrelevant theories." (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 542, 464 N.E.2d 659, 680.)

As to who has the burden with respect to instructing the jury:

> "Generally, a party who desires a specific instruction must offer it and request the court to give it and the trial court has no obligation to instruct on its own motion. [Citations.] In criminal cases, however, this rule is modified in certain situations by the requirements of a fair trial. It has been held that a court bears the burden of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence and on the question of burden of proof." (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489.)

With respect to subjects to which the general rule applies:

> "A defendant cannot complain of the failure of the court to instruct on a certain feature of the case where he has not requested a proper instruction on that feature. [Citations.] Also, an instruction which includes both a correct and an incorrect proposition of law *** is properly refused and the trial judge is under no obligation to rewrite the instruction tendered by defendant so that it would be proper." *People v. Baylor* (1975), 25 Ill. App. 3d 1070, 1075, 324 N.E.2d 255, 259.

See *People v. Moorelander* (1962), 25 Ill. 2d 309, 312, 185 N.E.2d 166, 167-68.

■ There are nine instructions defendant claims should have been given. Defendant's instruction No. 2 defined the word "felony." (Ill. Rev. Stat. 1985, ch. 38, par. 2—7; Illinois Pattern Jury Instructions, Criminal, No. 4.04 (2d ed. 1981) (hereinafter IPI Criminal 2d).) A definition of the word "felony" was not necessary for the jury to determine whether defendant was guilty of the offense charged, and the trial court therefore did not err in refusing this instruction. Defendant's instruction No. 5 defined "negligence." (Ill. Rev. Stat. 1985, ch. 38, par. 4—7; IPI Criminal 2d No. 5.02.) There was no evidence from which negligence could be inferred, so this instruction was properly refused.

■■ Defendant's instruction No. 4 defined "willful," and defendant's instruction No. 6 set forth an ignorance or mistake defense. Both were based on defendant's erroneous interpretation of the mental state of willfulness and of the ignorance or mistake-of-law defense. Accordingly, both contained misstatements of the law which made their refusal by the trial court proper.

■■ Defendant's instruction No. 7 defined "specific intent." This instruction was also based upon defendant's misinterpretation of the law regarding the mental state of the offense at issue. Moreover, an instruction defining specific intent was not necessary. Defendant's instructions No. 9 (emphasizing that the case was a criminal case in which civil liability was not an issue), No. 12 (stating that "income" is not defined in the Internal Revenue Code and defining "gross income"), and No. 14 (instructing the jury as to what section 2—201 of the Illinois Income Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 2—201) provides) were all unnecessary for the jury to determine whether defendant was guilty of willful failure to file a return. (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301.) The trial court therefore properly refused defendant's instructions Nos. 7, 9, 12, and 14.

■■ Defendant's instruction No. 8 stated:
"If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant and the other to his innocence, it is your duty under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt."
This instruction was, in substance, an attempt to define reasonable doubt. (See *People v. Bryant* (1986), 113 Ill. 2d 497, 507-12, 499 N.E.2d 413, 418-20 (second paragraph of IPI Criminal 2d No. 3.02 that jury "should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence" was, in substance, an attempt to define reasonable doubt).) As such, it was properly refused. (*People v. Whittaker* (1970), 45 Ill. 2d 491, 495-96, 259 N.E.2d 787, 789.) Thus, the issues raised by defendant regarding the jury instructions do not warrant reversal.

Defendant next argues that the count of the information charging the offense of which he was convicted was deficient in two respects. It did not set forth the section of the Illinois Income Tax Act (the Act) alleged to have been violated (Ill. Rev. Stat. 1985, ch. 38, pars. 111—3(a)(2), 114—1(a)(8); see Ill. Rev. Stat. 1985, ch. 120, par. 13—1301) and it did not allege that defendant was a person subject to the provisions of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301).

It is first necessary to determine whether these contentions were raised in the trial court, since that will affect the standard of our review of the charge. (Compare *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440, with *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) Defendant was tried for the offense stated in count V of the information filed on May 23, 1986.

■■■ ■ Defendant argues that "[i]n his pro-se 'Motion to Dismiss,' filed May 16, 1986, Wendt argued he was not subject to the Act." This, of course, was not a challenge to the sufficiency of count V of the information, which was filed a week later. It is, furthermore, not a claim that the charge does not allege he was subject to the Act but rather the very different claim that defendant, in fact, was not subject to the Act. Neither this argument in the trial court, nor any of the other more general contentions defendant made there, properly raised the issue of whether the charge was insufficient by failing to allege that defendant was a person subject to the provisions of the Act.

In support of his claim that the other contention made in his first issue was raised in the trial court, defendant quotes from a reply brief in support of a motion to dismiss the information filed by counsel. The document quoted is not in the record at the location cited, and we did not find it elsewhere in the record, so we would be justified in ignoring this argument. Moreover, defendant quotes the reply brief as saying:

"... Furthermore, *counts III and IV* must be dismissed as a matter of law because the section relied upon in those counts does not define any offense. Therefore, they fail to allege any criminal offense as a matter of law." (Ellipsis in original.) (Emphasis added.)

Obviously, even if this appeared in the record it would not be sufficient to raise the issue now raised on appeal because it did not concern the count of the information charging the offense of which defendant was convicted (*i.e.*, count V).

■■■ ■ Since the contentions made on appeal were not made in the trial court, those challenges are made for the first time on appeal and count V:

"[I]s sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. [Citations.]" (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.)

Count V alleged:

"That on April 16, 1985, in the [*sic*] Boone County, Illinois, DONALD D. WENDT committed the offense of WILLFULLY FAILING TO FILE AN INCOME TAX RETURN in that he was a resident of the State of Illinois in 1984, and was required to file a Federal Income Tax Return for that year, and that he willfully failed to file an Illinois State Income Tax Return for the taxable year 1984. [*sic*] in violation of Chapter 120, Section 5—502, Illinois Revised Statutes[.]"

(See Ill. Rev. Stat. 1985, ch. 120, par. 13—1301.) This charge was sufficient to apprise defendant of the offense charged "with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) Count V is therefore sufficient to withstand the attacks in defendant's first issue.

In his second argument defendant contends that the Act never became law because:

"[T]he Senate did not read the proposed bill on three separate days and did not print the final bill and its amendments prior to passage. The House never conducted a first reading and also failed to print the final bill and its amendments prior to voting on it."

A similar issue was rejected in *Durjak v. Thompson* (1986), 144 Ill. App. 3d 594, 494 N.E.2d 589. Contrary to defendant's arguments on this issue, we believe that *Durjak* was correctly decided and controls the issue at bar.

In his fourth argument, defendant contends that he is entitled to a new trial because of improper and prejudicial remarks by the prosecutor. We disagree.

Although raised as a prejudicial-argument-of-the-prosecutor issue, defendant initially contends that the jury was tainted "before the first scintilla of evidence was even introduced" by statements made during *voir dire* by a prospective juror and by the trial court, which described willfulness as " 'a voluntary decision on [defendant's] part not to pay something he was supposed to pay.' " The prospective juror was excused for cause, and defendant did not raise the issue of whether the other prospective jurors had been tainted at the time of the remarks. He also made no objection to the remarks of the trial judge he now contends tainted the jury. Moreover, neither the remarks of the prospective juror nor the remarks of the trial court were raised as errors in defendant's post-trial motions. Accordingly, these arguments have been waived and will not be considered. See *People v.*

*Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739, 743.

⬛ Defendant argues that in this case, where the only charge being tried was willful failure to file a return, it was improper for the prosecutor to make remarks about his failure to pay income taxes. In context, the prosecutor's remarks on this subject were to the effect that defendant had failed to file a return in order to avoid paying taxes. These were proper as comments on defendant's motive for failing to file a return. *E.g., People v. Huckstead* (1982), 91 Ill. 2d 536, 548, 440 N.E.2d 1248, 1253; *People v. Bunting* (1982), 104 Ill. App. 3d 291, 296, 432 N.E.2d 950, 954.

⬛ Defendant also contends that he was prejudiced by the following remark made by the prosecutor during closing argument:

> "Now, I'm not saying that our tax laws are perfect. But Donald Wendt decided he didn't like our tax laws and so he decided that those laws didn't apply to him. When he did that, ladies and gentlemen, he cheated not only you and me but he cheated every other honest taxpayer in the state of Illinois who every April 15 digs down deep and provides their fair share."

The trial court ruled, *sua sponte*, that this was improper argument. The court had a conference with counsel at which defense counsel, in an apparent attempt to keep all of his options open, "request[ed] at a minimum [the jury] be given a cautionary instruction." The court did so, telling the jury:

> "There's one comment that [the prosecutor] made which I'm sure was inadvertent. He made some comment that by doing what he did the defendant was cheating us or the defendant was cheating you. And I want to make it clear that you're not to put yourself in the position of anything other than an impartial judge of the facts. You're not to consider yourself a potential victim of something. You're simply—I'm the judge of the law, you're the judge of facts, and all of us are to be impartial in weighing this, and neither sympathy nor prejudice should influence you one way or the other."

This admonition was sufficient to correct any error in the prosecutor's remark. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303, 1312; *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238-39.) That being true, it is unnecessary to decide whether defendant waived the issue of this remark's propriety or whether the remark was improper, two subjects on which the parties differ.

⬛ In his third issue, defendant argues that the action should have been dismissed, and in his seventh issue defendant argues that a motion in arrest of judgment should have been granted. In both is-

sues, he contends that his wages are not income under the State and Federal Constitutions. He argues that his wages were received for exercising his right to earn a living by working and that this right is not a taxable privilege. He argues that income means only corporate profit. These and similar contentions have been rejected in numerous Federal cases, including one litigated by the same attorney representing defendant. (See, e.g., *Coleman v. Commissioner of Internal Revenue* (7th Cir. 1986), 791 F.2d 68, 70 ("The code imposes a tax on all income. [Citation.] Wages are income, and the tax on wages is constitutional"); *Lovell v. United States* (7th Cir. 1984), 755 F.2d 517, 519 ("All individuals, natural or unnatural, must pay federal income tax on their wages, regardless of whether they received any 'privileges' from the government. *** [P]laintiffs' assertion that money received in compensation for labor is not taxable has been rejected by numerous courts"); *United States v. Latham* (7th Cir. 1985), 754 F.2d 747, 750 ("Latham contends that the district court improperly refused his instruction defining 'income' as distinct from 'gross income.' This instruction was intended to enforce his claim that he in good faith believed that wages are not income for taxation purposes ***. *** [A] claim of this nature is without merit. [Citation.] Latham's wages were and are income; thus, his proposed jury instruction was a misstatement of the law and the district court properly refused to adopt the same in the instructions"); *United States v. Koliboski* (7th Cir. 1984), 732 F.2d 1328, 1329 n.1 ("Although not raised in his brief on appeal, the defendant's entire case at trial rested on his claim that he in good faith believed that wages are not income for taxation purposes. Whatever his mental state, he, of course, was wrong, as all of us already are aware. Nonetheless, the defendant still insists that no case holds that wages are income. Let us now put that to rest: WAGES ARE INCOME. Any reading of tax cases by would-be tax protestors now should preclude a claim of good-faith belief that wages—or salaries—are not taxable").) We rejected a similar argument under the Act in the context of instructions in *People v. Clay* (1988), 167 Ill. App. 3d 628, 636-37, 521 N.E.2d 243, 249-50.

Defendant also argues in these issues that section:

> "2—203(d)(2) [of the Illinois Income Tax Act] limits the phrase 'taxable income,' to income properly reportable for federal income tax purposes by certain specified insurance companies, corporations and investment trusts. It does not include individuals in its terms."

This, too, is frivolous. Defendant apparently refers to section 2—203(e)(2) of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 2—203(e)(2)).

(Compare Ill. Rev. Stat. 1985, ch. 120, par. 2—203(d)(2), with Ill. Rev. Stat. 1985, ch. 120, par. 2—203(e)(2).) What he has done is ignore the general provision of section 2—203(e)(1), examine solely the special rules set forth in section 2—203(e)(2), and conclude that since there is no rule in section 2—203(e)(2) applicable to individuals, individuals cannot earn taxable income. (Ill. Rev. Stat. 1985, ch. 120, pars. 2—203(e)(1), (e)(2).) This is obviously absurd.

▮▮ In defendant's seventh issue, he adds his contention that the process by which the sixteenth amendment to the United States Constitution was ratified was "fatally flawed." Based on the statement in the initial brief, we would be justified in holding this issue waived for failure to argue it or cite authority. (107 Ill. 2d R. 341(e)(7).) In addition, the argument, developed in the reply brief, is frivolous. Federal courts have held that (1) the question is a nonjusticiable political question and (2) the sixteenth amendment was properly ratified so as to become part of the U.S. Constitution. See, *e.g.*, *United States v. Foster* (7th Cir. 1986), 789 F.2d 457, 463 n.6; *United States v. Thomas* (N.D. Ill. 1985), 611 F. Supp. 881, 883-84; *United States v. Wojtas* (N.D. Ill. 1985), 611 F. Supp. 118.

▮▮ Moreover, the basis on which, prior to the sixteenth amendment, the United States Supreme Court had held that the income tax law then enacted was unconstitutional was that the law taxed income from property, that taxation of the income was the same as taxation of the property itself, that taxation of the property constituted a direct tax, and that the tax was unconstitutional as a direct tax because it was not apportioned among the States. (U.S. Const., art. I, §9; *Pollock v. Farmers' Loan & Trust Co.* (1895), 157 U.S. 429, 39 L. Ed. 759, 15 S. Ct. 673; *Pollock v. Farmers' Loan & Trust Co.* (1895), 158 U.S. 601, 39 L. Ed. 1108, 15 S. Ct. 912.) According to one treatise:

> "Forty-two years later, with its decision in *New York ex rel. Cohn v. Graves*, [(1937), 300 U.S. 308, 81 L. Ed. 666, 57 S. Ct. 466,] the Court in effect overruled *Pollock* and in so doing rendered the Sixteenth Amendment redundant." (R. Rotunda, J. Nowak, & J. Young, Treatise on Constitutional Law: Substance and Procedure §5.2 (1986).)

Also, *Pollock* did not affect the propriety of taxing wages. In fact, the *Pollock* court stated:

> "We have considered the act only in respect of the tax on income derived from real estate, and from invested personal property, and have not commented on so much of it as bears on gains or profits from business, privileges, or employments, in view of the instances in which taxation on business, privileges,

or employments, has assumed the guise of an excise tax and been sustained as such." (*Pollock v. Farmers' Loan & Trust Co.* (1895), 158 U.S. 601, 635, 39 L. Ed. 1108, 1125, 15 S. Ct. 912, 920.)

It, therefore, appears that even if defendant were correct and the sixteenth amendment was improperly ratified and so not part of the United States Constitution, the income tax on his wages would be proper because (1) the sixteenth amendment is redundant and so does not affect the propriety of the tax and (2) even under *Pollock*, the income tax on defendant's wages would pass constitutional muster.

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN and WOODWARD, JJ., concur.